UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| DWIGHT DAVENPORT, ) | |
| ) | |
| Claimant, ) | |
| ) | |
| vs. ) | Case No. 3:17-CV-0220-CLS |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner, Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Claimant, Dwight Davenport, commenced this action on February 9, 2017, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying his claim for a period of disability and disability insurance benefits.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ improperly considered the opinion of his treating physician, and improperly evaluated his credibility and complaints of subjective symptoms. Upon review of the record, the court concludes that these contentions lack merit, and the Commissioner's ruling is due to be affirmed.

A.  **Treating Physician Opinion**

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. (alterations supplied). Additionally, the ALJ is not required to accept a conclusory statement from a medical source, even a treating source, that a claimant is unable to work, because the decision of whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner." 20 C.F.R. § 404.1527(d).

Social Security regulations also provide that, in considering what weight to give *any* medical opinion — regardless of whether it is from a treating or non-treating

physician — the Commissioner should evaluate: the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other relevant factors. *See* 20 C.F.R. § 404.1527(c). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

Dr. Leonides Santos, claimant's treating physician, submitted a "To Whom It May Concern" statement on January 20, 2014. Dr. Santos indicated that he was responding to an "attached questionnaire," but the court could not locate a copy of the questionnaire in the record. Dr. Santos stated that claimant suffers from chronic back pain as a result of degenerative disc disease, but that he cannot afford surgical treatment. Claimant also experiences neuropathy, venous insufficiency/stasis, cardiac stenting and heart disease, bipolar disorder, anxiety, panic attacks, and depression. His prognosis "has worsened over the last 2 years and within the past 10 months has became [*sic*] a problem for everyday activities including standing, walking, lifting and any other normal types of functional capabilities."[1] Claimant could not sit, stand

---

[1] Tr. 685.

or walk "for long periods of time."[2] Specifically, claimant could not stand or walk for any longer than fifteen to twenty minutes out of any given hour, without his symptoms worsening. As a result of his worsening symptoms, claimant "could be out of or miss work 1-2 days a week resulting in 4-8 days a month at times."[3] Dr. Santos opined that "it would be hard [for claimant] to work from the severity and constant pain, due to any type of activity including standing, walking and bending causing increased severe pain."[4]

The ALJ rejected Dr. Santos' statement that it would be hard for claimant to work because "the final responsibility for deciding the issue of disability is reserved to the Commissioner of the Social Security Administration . . . ."[5] The ALJ also cited Social Security Ruling 96-2, which stated that "[c]ontrolling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques," and that, "[e]ven if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is 'not inconsistent' with the other substantial evidence in the case record." SSR 96-2, 1996 WL 374188, at *1 (alterations

---

[2] *Id.*
[3] *Id.*
[4] *Id.* (alteration supplied).
[5] Tr. 206.

4

supplied).[6] Even so, the ALJ did not take the additional step of explaining whether she thought Dr. Santos' opinion was well-supported and consistent with the remainder of the medical record.

Instead, even though she did not explicitly so state, the ALJ appears to have relied instead on the opinion of consultative physician Dr. Laura Lindsey, who examined claimant on September 5, 2013. Dr. Lindsey noted that claimant complained of back and neck pain that had significantly worsened after a motor vehicle accident in 2010, and that was aggravated by activities like sitting or walking. During the clinical examination, claimant verbalized pain to palpation of the cervical, thoracic, and lumbosacral spine and surrounding muscles. He also verbalized pain with any movement and was not fully cooperative with the range of motion assessment. Claimant had full motor strength in his upper and lower extremities, intact sensation, and normal reflexes. He presented no tremors and could ambulate independently with and without assistive devices. His gait appeared normal and coordinated. He could get in and out of chairs and on and off of the examination table without assistance or difficulty. He could walk heel-to-toe and squat without difficulty. Dr. Lindsey assessed claimant with chronic back and neck pain,

---

[6] Social Security Ruling 96-2 was rescinded by the Social Security Administration on March 27, 2017, but the rescission only applied to claims filed after March 27, 2017. *See* Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p, SSR 96-2P, 2017 WL 3928305 (S.S.A. Mar. 27, 2017 ) ("This rescission will be effective for claims filed on or after March 27, 2017.").

myocardial infarction, hypertension, hyperlipidemia, emotional issues, and attention deficit hyperactivity disorder. Based upon the examination, Dr. Lindsey concluded that claimant could independently sit, stand, walk, hear, speak, carry, lift, travel and handle objects. She observed that, even though claimant was taking multiple medications for his conditions, he appeared to be minimally limited by those conditions.[7]

The ALJ did not specify the weight she afforded Dr. Lindsey's consultative assessment, but she appears to have credited it over the assessment of claimant's treating physician, Dr. Santos, because she found claimant to be capable of performing a limited range of sedentary work. She specifically noted that Dr. Lindsey's residual functional capacity finding was designed to "give the claimant the benefit of restrictions from his back, heart, and respiratory conditions as well as mental impairment."[8] The ALJ also noted that, despite claimant's allegations of disabling functional limitations, Dr. Lindsey opined that claimant was only minimally limited by his medical conditions.[9]

Claimant asserts that the ALJ should have given Dr. Santos' opinion more weight than Dr. Lindsey's opinion, because Dr. Santos was a treating physician. But

---

[7] Tr. 678-81.
[8] Tr. 207.
[9] Tr. 206.

6

it is well-established that an ALJ is not required to accept a treating physician's opinion when it is inconsistent with the doctor's own records or with other evidence in the administrative record. *See, e.g., Phillips, supra.* Claimant criticizes the ALJ's decision to rely upon Dr. Lindsey's assessment because the assessment "lacks specificity and fails to even set forth how long or in what capacity" claimant is able to engage in activities like sitting, standing, walking, hearing, speaking, carrying, lifting, traveling, and handling objects.[10] It is true that Dr. Lindsey did not provide an explicit assessment of how long claimant could perform each of those activities during a work day. More detail would have been beneficial, but Dr. Lindsey did state that claimant's limitations were minimal, and minimal impairments would not support a finding of disability.

Moreover, Dr. Lindsey's assessment was supported by other evidence in the record. Dr. Jerry Williams, claimant's cardiologist, stated in three treatment notes recorded on February 21 and December 12 in 2012, and June 27 in 2013, that claimant reported no active pain. He could perform self-care activities and ambulate unassisted; he experienced no mobility limitations; and he demonstrated a normal range of motion. Claimant denied experiencing numbness, weakness, walking problems, muscle aches, and muscle weakness.[11]

---

[10] Doc. no. 11 (Claimant's Brief), at 14.
[11] Tr. 645-59.

Finally, claimant asserts that Dr. Santos' long history of treating claimant for a variety of conditions, including pain, weakness, numbness, anxiety, and depression, and his prescription of a variety of medications to treat those conditions, should have caused the ALJ to credit his assessment of disabling symptoms. But neither the mere existence of impairments, nor the medication that is prescribed to treat those impairments, is sufficient to establish disability. Instead, the relevant consideration is the effect of claimant's impairment, or combination of impairments, on his ability to perform substantial gainful work activities. *See* 20 C.F.R. § 404.1505(a) (defining a disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). *See also Bowen v. Yuckert,* 482 U.S. 137, 146 (1987) ("The [Social Security] Act 'defines "disability" in terms of the effect a physical or mental impairment has on a person's ability to function in the workplace.'") (quoting *Heckler v. Campbell,* 461 U.S. 458, 459-60 (1983)). There is no evidence that Dr. Santos assessed any disabling *functional* limitations.

**B.    Subjective Symptoms and Credibility**

To demonstrate that pain or another subjective symptom renders him disabled, a claimant must "produce 'evidence of an underlying medical condition and (1)

objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.'" *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (quoting *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). If an ALJ discredits subjective testimony of pain, "[s]he must articulate explicit and adequate reasons." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing *Jones v. Bowen*, 810 F.2d 1001, 1004 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)) (alteration supplied).

The ALJ in the present case properly applied these legal principles. She found that claimant's medically determinable impairments could reasonably have been expected to produce some of the symptoms claimant alleged, but that claimant's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible.[12] This conclusion was in accordance with applicable law. *See Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir. 1992) ("*After* considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence.") (citing *Wilson v. Heckler,* 734 F.2d 513, 517 (11th Cir. 1984)) (emphasis supplied).

The ALJ also adequately articulated reasons to support her findings. She

---

[12] Tr. 206. *See also id.* ("Medical evidence shows the claimant has underlying medical conditions, but it does not support his allegations of severe and chronic limitation of function to the degree that it would preclude the performance of all substantial gainful activity.").

9

reasoned that "[t]he medical records fail to document a sufficient objective basis to accept the claimant's allegations resulting in functional limitations as wholly credible."[13] Claimant disputes that finding because he has undergone MRI testing that revealed damage to his lumbar vertebrae. Indeed, a March 15, 2010 MRI revealed no acute findings in the cervical spine; disc space narrowing, arthritic changes, and lateral disc extrusion with "marked neural foraminal narrowing" at L4-5; arthritic changes and "small central disc bulging" at L3-4; and "small central disc protrusion" at L5-S1.[14] A February 17, 2011 MRI revealed broad disc protrusion at L4-5, some disc protrusion at L3-4, and only "probable minimal protrusion" at L5-S1.[15] Finally, a February 25, 2015 MRI revealed "[m]inor disc bulging at L3-L4, L4-L5 and L5-S1 with mild central and foraminal narrowing at L4-L5 but no neural impingement."[16] Additionally, nerve conduction tests conducted on February 3, 2015 revealed "findings consistent with a motor-sensory peripheral polyneuropathy, with possible demyelinating features."[17] It is, therefore, apparent that claimant suffered from conditions that could cause back pain. The ALJ acknowledged as much, but not everyone who suffers back pain is disabled from all employment. As discussed

---

[13] Tr. 206 (alteration supplied).
[14] Tr. 492-93.
[15] Tr. 634.
[16] Tr. 846 (alteration supplied).
[17] Tr. 861.

above, the ALJ justifiably relied upon Dr. Lindsey's assessment that claimant did not suffer sufficient functional limitations from his impairments to preclude him from all employment.

The ALJ also noted that the medical records contained some inconsistencies that caused her to question the extent of claimant's limitations. She noted Dr. Lindsey's observation that claimant verbalized pain with any movement and was not fully cooperative with the range of motion exercises, resulting in limited range of motion findings.[18] Additionally, the ALJ relied upon the observations of Dr. Lauren Rotman, who conducted a neurological examination while claimant was hospitalized on March 3, 2015. Dr. Rotman noted that claimant was "inconsistent on exam." Claimant initially would not lift his legs more than one centimeter off the bed, but he later lifted them several inches off the bed. Claimant also initially said the sensation in his right arm was less than in his left arm, but during the examination, claimant said both arms felt the same.[19] It was permissible for the ALJ to rely upon claimant's inconsistent reports to these physicians in determining that claimant's subjective complaints of disabling symptoms were not supported by the medical evidence.

Finally, claimant argues that the ALJ failed to consider his longitudinal treatment history and receipt of pain medications as favorable evidence supporting

---

[18] Tr. 206, 681.
[19] Tr. 206, 907-08.

his subjective complaints. There is no doubt that claimant has a consistent history of receiving treatment for both his physical and mental impairments. The ALJ considered claimant's treatment history, but there still is no evidence that claimant experienced disabling *functional* limitations exceeding those in the ALJ's residual functional capacity finding.

**C.     Conclusion and Order**

In summary, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED. Costs are taxed against claimant. The Clerk is directed to close this file.

DONE this 19th day of October, 2017.

_____
United States District Judge